Welcome to everyone here. Just a couple of housekeeping matters before we get started. Judge Grant and I are so pleased that we have been able to sit with Judge Damien, who has helped us out on Tuesday and now again today. So thank you very much for being here. We truly appreciate it. And for those of you who are not familiar with how the Eleventh It is on a traffic light system. As long as the light is green, keep going. When it is yellow, that is your two-minute warning. And when the light is red, it doesn't mean shift to your final topic. It means wrap that one up. Unless, of course, we still have questions. We may keep you past that. But with that, let's go ahead and get started. The first case is Brar Hospitality Inc., DBA Quality Inn and Suites v. Mt. Hawley Insurance Company, Renaissance Re Syndicate 1458 Lloyds. And it is 24-11257. Mr. Winslet, you may proceed when you are ready. And I see that you have reserved some time for rebuttal. Good morning, Your Honors. May it please the Court. I'm Greg Winslet. I'm here on behalf of the appellants in this case, Mt. Hawley Insurance Company and Renaissance Re. We're here today, as the Court knows from the fairly massive amount of briefing that's been submitted here, we're here today because it's Mt. Hawley's position that this entire dispute arises from an insurance appraisal that should never have occurred. And the only reason this insurance appraisal did occur, as far as we're concerned, is because the Federal District Court refused to apply the law of the State that truly governs this contract dispute, and that was the law of the State of Georgia. Now, as far as the facts are concerned, Your Honor, there's really not much in the way of factual disputes. Let me ask you one quick question before you do that. So, as you well know, in U.S. Fidelity and Guarantee Company, we certified the issue of the appropriate choice of law test for real property insurance cases. We did not receive an answer. Is there any Florida case law, I have not been able to find any, but just out of curiosity, that postdates that case that makes it clearer what the choice of law doctrine should be here? Your Honor, if there's one, I'm not aware of it. Thank you. All right. So, again, just by way of background, and I don't want to burden the Court with a lot of this background discussion, but very quickly, Brar Hospitality owned a quality inn that was located in Pensacola, Florida. Mount Holly issued a property policy covering that location. While that policy was in force, Hurricane Sally impacted the property. Brar submitted a claim to Mount Holly. Mount Holly investigated it thoroughly with multiple experts and forensic analysis, including an engineer. In going through that investigation, Mount Holly determined that while there was some discrete amount of covered loss, particularly to one area of the shingle roof and then the interior that corresponded with that area of the roof, Mount Holly ultimately determined that the covered loss did not exceed the deductible. It advised the insured of that position and didn't hear anything further from the insured for roughly 14 months. In fact, Mount Holly had closed its file and had basically deemed this claim as having been over. But 14 months later, Mount Holly received from the Insurance Council a very massive submission that included a multimillion dollar estimate that basically would have required re-gutting the hotel and literally rebuilding it. It was such a massive departure from what Mount Holly observed when it evaluated the claim that it essentially responded to the plaintiff that it needed some time to get its arms around everything that Brar had submitted. But what happened thereafter is Brar sued Mount Holly. And when Brar sued Mount Holly, they also filed a motion to compel appraisal. Mount Holly resisted that motion for appraisal because it was Mount Holly's position that Georgia law applied to this dispute and that under Georgia law, because this was predominantly a dispute regarding insurance coverage, that appraisal was not appropriate. Let me ask you a question. So obviously, this could go, you know, there's kind of like, it could go one of two ways. We either stick with Florida law, in which case the appraisal happened as it should have under Florida law, or we go Georgia law, no appraisal. Let's go with Florida law. They, it looks like your position is if Florida law applied, and yes, the appraisal was to happen, the district court then sort of treated this like an arbitration and just sort of adopted it. What would be the, what I'm not really understanding is your claims about what had your defenses been borne out and addressed, what was covered and what was not covered. That's what I don't appreciate the distinction there. I mean, let's just assume we're going to stick with Florida law here, and we agree with you that the district court kind of got rid of this a little too quickly. What would happen next? Well, what, Your Honor, what we think should have happened next is once the appraisal was concluded, we tried to go back to the district court and we asked the judge to allow us now to litigate the various issues of coverage that we were convinced did exist. Now, to the court's question, the coverage issue, there were many coverage questions here that arose from Mount Holly's experts' investigation of the loss. For example, there was a massive amount of interior damage that Brar seeks to recover as part of this appraisal award. Well, the engineer that Mount Holly retained opined that virtually all of this interior damage came in through already pre-existing openings in the exterior of the hotel, around the PTAC units, through the windows, the sliding glass doors, and the balconies. And these are not covered losses. Why doesn't the Florida Supreme Court's decision in Johnson say that issues like that were for the appraiser to decide? I'm sorry, under which case? Johnson. The Texas case, Johnson? No, the Florida case, I believe. Okay. Well, I guess that's a fundamental disagreement between Mount Holly and the district court as it relates to the law. There are intermediate appellate courts in Florida that basically hold that just because there is an appraisal award, it doesn't preclude the carrier from coming back and litigating discrete issues, items of the appraisal award that aren't covered. And I would submit to the court that the district court's reasoning for not allowing us to do that was based upon the Three Palms Point decision of this court, which interpreted an earlier Florida Supreme Court case, Lycia, and there have been several intermediate Florida appellate courts since then that have criticized Three Palms Point and indicated that the court really took Lycia too far and that Lycia did not involve a circumstance where there was a dispute regarding the scope of coverage. But what about, I'll read you the language from Johnson that I wonder if this boils it down, and this is the Florida Supreme Court in 2002. We hold that causation is a coverage question for the court when an insurer wholly denies that there is a covered loss and an amount of loss question for the appraisal panel when an insurer admits that there is covered loss, the amount of which is disputed. Why is this different than that? Well because in this case, the amount of covered loss that Mount Holly acknowledged was a very small amount of loss. All of the other things that we saw were either not covered under the policy or they were subject to exclusions in the policy. And I don't, I would just fundamentally disagree with the idea that because a carrier agrees that there's some small amount of covered loss, that somehow gives rise to appraisal. And then an appraisal panel can just rule whatever they want, millions and millions of dollars of damage, even though the vast majority of it would be damage that we dispute on a coverage basis, but we just have to pay it with no questions asked and no litigation and no discovery and no pursuit whatsoever regarding the various coverage issues that we identified from the very beginning of this claim. But then we go to, so the Johnson case is a 2002 Florida Supreme Court case. And then as you have talked about, we interpreted Florida law in 2004 in the Three Palms Point case, which I understand, which is tracking Johnson. And I understand that the other, the lower courts in Florida have criticized that and say that we misread Lycia. But if Three Palms Point is tracking the Florida Supreme Court and Johnson, why are we listening to the criticism of the lower appellate courts? Well, I guess that begs the question because I agree with the court conceptually that if Three Palms Point correctly tracks the Florida Supreme Court's opinion as it relates to what an appraisal panel can or cannot decide, then the court's probably correct. But I don't believe that that's what the Florida Supreme Court has said. In fact, there is a recent Florida Supreme Court case, American Coastal v. San Marco Villas, where in that case there was an issue regarding whether, a carrier in that case argued that when you had coverage issues and you also had an appraisal clause and you had some dispute regarding the amount of loss because there was retained rights provision in the appraisal provision, that the carrier said, well, you're going to have to litigate coverage before we go to appraisal. And the Florida Supreme Court disagreed with that and said, no, you don't have to litigate coverage first. But in that opinion, the Florida Supreme Court literally said that you can certainly go to appraisal first, which is the insurer's right to do, but the carrier can still litigate issues of coverage. There is a common refrain that I would point the court to that virtually all courts fall onto the idea that questions regarding coverage are for the court, not for an appraisal panel. Can you, what are some of the coverage things here? You mentioned that there was interior damage that, you know, your client believes should not be covered at all. And that's actually, so is it, the policy does cover damage to the interior. That's not the issue. It's that this damage was not caused by the hurricane at all? Well, no, that's not our position, Your Honor. The interior damage can be covered under the policy if the water that migrated in as a result of this storm came in through, wind created openings in the exterior. If the water came in because of some preexisting issue, in this case, there was wear and tear and deterioration around the windows, around the sliding glass doors. There were installation issues that basically created a gap around those various appurtenances on the exterior of the building. That's not covered. That keys into multiple exclusions under the policy. And that's been Mount Holly's position from the very beginning. Interior water damage most certainly can be covered, but it has to be interior water damage where the water comes in based upon a storm created opening, not because of some preexisting condition that already existed on the property. If, you know, and maybe I'm going a little too far down a rabbit hole here, but in this case, if interior water damage was, everybody found it, it's there, and there were preexisting conditions, but the water came in, in this instance, because of the wind and the storm. So it's partly the result of, you know, ultimately the straw that broke the camel's back, let's say. Was the hurricane, is that an issue for the appraiser or an issue for the court? If it's just the amount, how much came from the hurricane, how much came because of the preexisting conditions? Well, Judge, you're kind of mixing concepts respectfully because all of this water came from the hurricane. There's no doubt about it. The issue is though, why was this water allowed to infiltrate the structure as a result of the hurricane? And what our folks determined was the only reason that water got in there, it wasn't because the wind created openings in the exterior. It was because there were a whole host of preexisting conditions regarding the windows, the PTAC units, and the sliding That's a court decision, not an appraiser decision. Correct. Correct. But is that a question about what the policy covers or do both sides agree that if water came in because of preexisting conditions, it would not be covered? It's not covered. Right, but do both sides agree on that or is that a question in dispute? I don't know that that's a question that's in dispute that I'm aware of. I think it's long been established that water that just comes in because of some preexisting condition on the property is not covered. It's not covered interior damage. There is a water limitation in the policy, Your Honor, that basically explicitly says that interior damage caused by water must have been caused by some covered wind-created opening in the structure. And if it's not, it's not covered. But I assume that your expert or appraiser or whoever says that that's how the water came in because of these preexisting conditions, right, this wear and tear. I assume that Broward Hospitality's evaluation says the opposite. And so why isn't a better rule that the appraiser who has expertise in evaluating those arguments would make that call rather than this court? Maybe my colleagues are really skilled at determining how water intruded into a hotel, but for my part, I'm not. So why does that make sense as a rule to have us deciding that rather than a qualified appraiser? Well, I could discuss for quite a while what I perceive to be irregularities in this appraisal process, but I'm not going to waste the court's time with that. What I will say is during the appraisal process, the insurer's own appraiser in multiple email traffic, this is in the court's record, indicated that he knew that there were going to be issues of coverage that the court was going to have to determine here. There was no, in fact, if you read the communications among the appraisers and the umpire, you see no indication that what they were really trying to do was determine causation or coverage. What they were trying to do is determine what they said was the amount of loss. So, and in fact, I would also point out to the court that when the district court ordered us originally to appraisal, we sought an interlocutory appeal of that ruling on the basis that it was essentially injunctive relief and that while this court, and I understand why, while this court dismissed the interlocutory appeal, even in this court's order dismissing the interlocutory appeal, this court explicitly said that after the appraisal process, we'll have an opportunity to basically litigate the coverage issues. And that's always, look, I don't want to lose track here, this whole discussion under Florida law, just to remind everybody, to me is completely irrelevant to this dispute. So actually, on that point, and apologies because I know you're already over, but just real briefly, as I started, right, we had that V, the upside down V. One way was if we went Florida law and the other way is if we go Georgia law. If this had proceeded with Georgia law applying, where would we be? We would be back in district court litigating this case on the merits, which is what Mount Holly has wanted from the very beginning. All we've ever wanted to do is have our day in court as it relates to these coverage issues and we've been thwarted at every turn. There's If Georgia law applies to this dispute, that what we have here would not have been subject to appraisal. The district court's opinion even references that. What happens, so if Georgia law applies and this goes back, what use then of the appraisal, if anything?  Okay, so then you just It's as if it didn't exist because it never should have existed. So you have dueling experts on what damage was caused by the storm and whether or not the storm damage then hits an exclusion. That's correct, your honor. Because this is all, everybody agrees, this is all damage that occurred during Sally, right? No. But there's an exclusion that takes some of it out. I don't mean to parse the court's words. The only reason I disagreed with what you said is because when our engineer inspected, he saw indications of longstanding water damage that would have predated the policy. That's all I meant when I said that. But in any event, I don't think anybody disputes the notion that if Georgia law applies here, which it should under Lex Loci contractus, then we would never have been ordered to appraisal here because Georgia law could not be any clearer that appraisal would not be appropriate under these circumstances. And so, I'll just say, I'm running out of time. I spoke way longer than I intended to on Florida law. But I will just say that we're very confident and believe very strongly that this exception to Lex Loci contractus that the federal district court seized upon doesn't exist. It just doesn't exist. The only exception to Lex Loci contractus... You are well over your time, so I'm just going to ask one question, which is, given that we've already certified that question to the Florida Supreme Court once, is there any reason we shouldn't do it again? Well, I personally believe that it's clear that Lex Loci contractus applies here, but I will say to the court, if the court, if there is any remaining uncertainty among the court regarding that issue, then yes, I would certainly understand why you would certify that question to the Florida Supreme Court. And certainly, in our U.S. Fidelity and Guarantee, when we did certify it, we concluded the appeal presents an unsettled question of Florida law that is determinative of our decision. Well, you know, Your Honor, as I think you know from our briefing, one of the alternative remedies we sought is that either a determination from the court that Georgia law applied or alternatively certifying that question to the Florida Supreme Court. Thank you. In a rough quote of what Judge Ed Karn said to me when I was arguing here once, so if we agree with you, you want us to rule for you. And if we don't or we're not sure, you want us to send it to the Florida Supreme Court, correct? Yeah, that's pretty much it. And you do still have some time for a rebuttal. I'm sorry? You still have time for a rebuttal. Thank you. Thank you, Your Honor. Appreciate it. Ms. Luca? Sorry, I'm a sprawler. That's all right. And let me start you with the question that I started Mr. Winslet with, that we have certified this question before. We tried to get an answer and then the case settled. Why aren't we certifying again? Well, Your Honor, respectfully, I think that there was no need to certify it the first time. Obviously, you're not bound by a prior court's decision to certify a question. And if you look at Roach and what Roach was focused on, even its dicta in this case, and I'd like to make a note, the brief, the initial brief argues strenuously that Roach controls this case and it sounds like the insurers have moved away from that position. And I would agree with them because Roach clearly was focused on automobile insurance policies. Roach relied on Storiano. Storiano actually expressly stated that it was limiting the question to insurance policies related to auto. And that's important because the fourth DCA's certified question was very broad. The Supreme Court chose to narrow it. And Roach obviously didn't expand the scope. Roach's facts didn't involve real property. So Roach could not control this inquiry, which I realize is digging my hole about why you wouldn't want to certify the question. You also think that if we agree with you, we should decide it. And if we're uncertain or disagree, we should certify it. Yes.  So if we certify it, and if Florida comes back and says, Georgia law applies, what happens if, what use will there be of the appraisal, if any? Do you agree with Co-Counsel that the appraisal is gone? I guess you could have an expert witness use it. Well, actually, Your Honor, you raise a really good point. And that is that I would point you to Prime Insurance Syndicate versus B.J. Hanley Trucking, the 11th Circuit case that the initial brief relies upon. And there the court, this court, said the determination of where a contract was executed is fact-intensive and requires a determination of where the last act necessary to complete the contract was done.  So let me rephrase my question. We certify it to the Supreme Court. The Supreme Court... If the Supreme Court said Lex Loci Contractus applies even to insurance for real property, then the issue would have to go back to the District Court, because the District Court would have to make the, quote, fact-intensive inquiry about where the last act necessary... Okay. So if the District Court, it goes back to the District Court, and the District Court says I have made the fact-intensive inquiry and it's Georgia law, what use, if any, becomes of the appraisal? I agree with Defense Counsel that the appraisal becomes moot. However, I would point out that in Prime Syndicate, this court said that the insured was an Alabama resident and located in Alabama at the time of the oral agreement, therefore, Alabama law controlled. It is not, as the initial brief would have you believe, a foregone conclusion that this is Georgia. And I'd actually like to make a very practical point while I'm here. And Judge Damien, I'm going to use you as my example, because you came up from Miami. Do you know where the underwriter who signed your homeowner's insurance policy was located? I don't either. And Your Honors, if you look at the affidavit of the Vice President of Claims, which is document 5-1, page 3, he says one of Mount Holly's primary underwriting offices happens to be located in Alpharetta, Georgia, which means there's more than one. If you check their website, they are nationwide. And their answer, which is doc 4, page 1, paragraph 3, Mount Holly is an Illinois insurance company. Who signed last? Didn't the, doesn't the insured sign last? So the, I honestly don't even know the answer to your question, Judge Damien. But my- So this is interesting. So you're saying even if we certify and the Florida Supreme Court says we should be abiding by Lex Loci Contractus, you're saying that's not the end of the story, because now the district court has to determine where the last part of the contract happened. Correct, Your Honor. So it's not a done deal even at that point. But I think then going back to Judge Branch's question, let's just say we all determined that the last act was actually in Georgia, or the district court determines that the last act was actually in Georgia. So once again, no appraisal. So I think her question went back to then what happens in your view. The first one was you all agree that the appraisal is out the window, which seems like such a waste of money. It doesn't even come in as like expert. Your Honor, actually, I agree that there would have to be further proceedings. I do not want to commit to what those proceedings would be, because honestly, I haven't given it a whole lot of thought. And that is because my position would be that if you look at what this court said in Shapiro and Lafarge, they completely track with what the Supreme Court said in Roach and what the Supreme Court said in Sturiano, which is it's all about stability. You don't want an insurance company that issues a policy to somebody who lives in New Jersey, who's garaged their car in New Jersey, who then happens to snowbird in Florida, to be able to say that Florida law controls. But you're still, okay, so moving from the conflict of law issue, do you then, let's go back to what Mr. Winslet was talking about, the coverage issues, which I realize are going to be different depending on whether we're looking at the appraisal report or we're just flat out litigating coverage. But at that point, if the appraisal is out the window, are you all in agreement regarding application of exclusions and would that bring your numbers closer together? No, absolutely not, Your Honor. And I would like to point out that Mr. Winslet told the court that if you look at the emails between the appraisers and the umpire, you will see that the parties knew they were never looking at causation issues. That's wrong. I would take you to document 51-4, page 5. This is the email from the umpire dated November 15th, 2023. After a thorough review of both appraisers' reports and from multiple onsite inspections, the quality and appraisal must determine two issues. First, were the direct damages caused by Hurricane Sally or were damages from other causes? So that was wrong. Also, document 51-3, page 3, the umpire notes that the insureds provided 447 pages of report and Brar provided 1,082 pages. The parties very clearly litigated, well, they fought with each other over this issue of causation. And the reason why, Judge Grant, I think you're absolutely right, Johnson controls this issue because Johnson addressed, after Lycia, Johnson addressed a conflict in Florida law between the DCAs and the issue was, as explained by the court, whether causation is a coverage question for the court or an amount of loss question for the appraisal panel when the insurer wholly denies that there is a covered loss. And the court held that the causation is a coverage question for the court when an insurer wholly denies that there is a covered loss. And covered loss, in this case, is a hurricane. That's the covered loss. Did a hurricane take place? Here's my question, which is the same as I asked your friend on the other side. Is the dispute between the parties, as you understand it, whether damages that were caused by the hurricane, but water that seeped in because of pre-existing problems with the windows, right? Is the dispute over whether the policy covers those at all or over whether, over the amount of damages that can be attributed to pre-existing holes in the walls versus wind damage? Your Honor, once they admitted that, yes, there was a hurricane that caused damage to this building, that is the covered loss. At that point, it becomes whether or not it was caused by seepage or pre-existing materials or wear and tear. Doesn't that sound like a legal decision? Because a policy could cover just whatever, whatever damage is caused by a hurricane, whether they're kind of pre-existing problems that exacerbated that damage or not, or it could limit itself to damage that happened kind of only because of the hurricane, right? Your Honor, Johnson answers the question. They said that, very simply, the Lycia court was saying that when an insurer admits that there is a covered loss, hurricane, but there is a disagreement on the amount of loss, it is for the appraisers to arrive at the amount to be paid. No, I understand, but I think covered, well, go on and then I'll see if I saw the question. In that circumstance, the appraisers are to inspect the property and sort out how much is to be paid on account of a covered peril. In doing so, they are to exclude payment for a, quote, cause not covered, such as normal wear and tear, dry rot, or various other designated excluded causes. So, in Lycia, if the homeowner's insurance policy provides coverage for windstorm damage, but not for dry rot, the appraisers inspect the roof and arrive at a value for windstorm damage and exclude payment for repairs required by pre-existing dry rot. The Supreme Court actually said that the appraisers look at whether something is caused by other designated excluded causes, and that is what they are arguing here. The appraisers decide whether those causes are excluded or not. Yes, Your Honor, and Judge Damien, I love rabbit holes, and you are not going down one. You're asking good questions, because I would point you to Mount Holly's affirmative defenses, and that is at document four. It's pages six through eight. Its defense is one through nine. They abandoned 10, 11, and 12. Number one is coverage limits. Everybody agrees that's not an issue. Number two is the loss did not exceed the deductible. That's the whole reason for the lawsuit, not an issue. Number three, the policy excludes coverage for a loss or damage caused by wear and tear. That is expressly limited, or expressly stated by Johnson. Number four, the policy excludes coverage for loss or damage caused by a designated item, materials used, or maintenance. And in this case, I believe, I cannot remember the exact number of pages, but it was 10 years worth of maintenance records that were provided to indicate that they're the condition of the property prior, and that it was not a maintenance issue. Number five, excludes coverage for loss or damage caused by continuous leakage or repeated seepage of water. Again, a delineated item. Johnson, please. Let me just, my question I don't think is clear. Are you, it sounds like not, but are you disputing that loss caused by wear and tear would be excluded? I agree that loss caused by wear and tear would be excluded, however, it is for the appraiser to decide what caused the loss. And if the appraiser believes that it was caused by wear and tear, the appraiser is supposed to exclude it. Right. That's what Johnson says. I understand. That was what I was asking, though. Are you arguing over whether wear and tear as a cause is excluded, and it sounds like you're not. It sounds like everyone agrees that if the loss was caused by wear and tear, then it's excluded. Right. And then it's for the appraiser to decide whether that happened and how much. Exactly, Your Honor. It is for the appraiser to decide that. And I would point you, for example, they have one about the policy doesn't uncover interior water damage caused by rain unless the building first sustains covered damage to its roof or walls. Judge Damien, document 51-4, page 5, the umpire's report. He says, from the damage photos I reviewed and from the attempted repair damages I observed as well as discussion with staff members who were on site during the hurricane, my evaluation is the widespread extent of damages would not exist but for the hurricane. Long duration hurricane and tropical storm force winds and vibration accompanied by extensive salt water rain have caused new stucco cracking providing water entry points. Any exterior cracking which may or may not have existed prior to the hurricane would have significantly increased from the hurricane effects on the building components. No evidence has been presented regarding preexisting damages. The damages are consistent with and were caused by hurricane force winds and rain from Hurricane Sally. They say there's an exclusion for no coverage for cosmetic damage to the roof. At 51-4, page 6, the appraiser says, as a structural engineer and licensed contractor and after discussions and meetings with the Escambia County Building Department, it is my professional opinion the roof, stucco, damaged balconies and defined windows have been damaged and will require replacement. So he found it's not cosmetic, they require replacement. No coverage for surface water damage. He determined that water entered... So what if the court, but if it was a matter of the, like for instance if we're talking about that interior damage, what if it's a matter of the umpire and the appraisers say, I think the example I was giving before, yes there was some wear and tear already there. The hurricane was just the straw that broke the camel's back. Is that covered? Your Honor, the appraiser, the point here is that the court doesn't, and I would take you to Westchester Surplus Lines versus Portofino, while a court may vacate an appraisal award if there has been a fraud, a court cannot look underneath the hood and reevaluate an appraisal award. It's not for the court. But I mean, I think that would be, the reevaluation would happen if the court took it upon itself to say, you know, okay, 50% was caused by the hurricane, 50% was caused by the wear and tear, so if there was $100,000 attributable to just the interior damage, you know, I, the court, am going to say, you know, it's only $50,000. That I get. That's amount of loss, but can't I as the court say the wear and tear is not covered and this damage is the result of wear and tear even though there was some, you know, water came in from the hurricane. Can't I as the court say that? I love that I get to answer with unequivocality. No. Absolutely not. That is a rare treat. Judge Grant, it's because of what you recognized, which is we aren't engineers. We aren't licensed contractors. We're lawyers. And in First Protective Insurance Company versus Hess, the first DCA in Florida explained that appraisal clauses are preferred as they provide a mechanism for prompt resolution of claims and discourage the needless filing of lawsuits. And it's because we allow people who have expertise to take on the function of making those decisions. And that's why we have, that's why we would let experts come in if we were litigating in court. Well, if we were litigating it in court, we would do that, but your honors, there is an appraisal clause in this contract. It's Doc 5-2, page 4. It's actually multiple places, but that's one, where the parties agreed that if there was a dispute, they would allow an appraiser to decide the issues. And the clause says, a decision agreed to by any two. So each side appoints an appraiser, and then there's an umpire. So if an appraiser and an umpire agree, then a decision agreed to by any two will be binding. And the only thing that Mount Holly reserved was a right to deny the claim, not to parse what the appraiser said, but to deny the claim, which is completely consistent with Lysia and with Johnson, that you get to say that there is no coverage at all. You get to say that there was fraud. You failed to comply with the contract terms. You failed to, and that would be the case that they cited to Citizens Property, you know, that they failed to allow, or failed to cooperate, failed to appear for an examination under oath, those sort of things. But that's not what we have here. And Your Honors, as said in Lysia, and then again in Johnson, once an award has been made, the only defenses that remain for the insurer to assert are lack of coverage for the entire claim or violation of the standard policy conditions. Didn't they also have some claims that there were some improprieties that happened with respect to the appraiser or the umpire and communications? Shouldn't they be able to go back to the court at least on that? No, Your Honor, because they abandoned it. They didn't say a word about it in their appeal. And when I said in my answer brief that they abandoned the issue, you didn't hear about it again in the reply. So they absolutely abandoned it. And regardless, the district court found that there was no fraud there. And that's where you say that the clause, or the only way that you vacate an appraisal award is if there has been a fraud. So, Your Honors, I see that there is a blinking light. If I could have 30 seconds? You can wrap it up. Okay. But really wrap it up. Really wrap it up. You don't need to certify a question because stability of contracts favors that the one and only thing that's stable is the location of the property. It's never going to be where an underwriter is or where an insurance company is primarily residing. It's where the property is. And that's completely consistent with Stiriano and Shapiro. You don't need to certify. And on the issue of the appraisal, the law that we have provided you is very clear. The parties agreed to an appraisal. They submitted tons of records. The umpire made his decision. There is no conflict to certify. Johnson has answered it. And we would ask, Your Honors, that you would affirm. Thank you.  Thank you, Ms. Luca. Thank you, Mr. Winslet. You have five minutes. I would begin by saying that the debate that we've all been engaging in over the course of this morning under Florida law about what you can appraise, what's a coverage issue, what's a causation issue, what can an appraisal panel do, what can they not. This is Exhibit A as to why this won't happen in Georgia. This is the exact scenario that the Georgia Supreme Court has sought to avoid in holding, when there are predominantly issues of coverage, no appraisal, period. Then why is there an appraisal clause in the policy? There is an appraisal. Well, because if you have, as Georgia points out, you know, that's a standard appraisal provision, the one that we have in our policy. And as the courts in Georgia point out, it is appropriate to go to appraisal when the insurance carrier and the insured both agree that this discrete area is covered, but they disagree over what it would cost to fix it. That is the very discrete issue that Georgia will allow you to go to appraisal on. If it goes beyond that, look, Lamb is a classic example. I won't burden the court with just a long recitation, but Lamb deals with the situation just like this. The carrier in that case acknowledged that there was some small amount of cover damage to the roof. The insured on the, you know, but it didn't meet the deductible or it was a small payment. The insured on the other hand said, no, no, no, no, no. My entire roof has been destroyed and it has to be replaced. And Lamb said, no. There's clearly a fundamental disagreement between the parties regarding the scope of coverage here, and in Georgia, you're not going to appraise that. It's exactly the situation here, and it avoids the fundamental unfairness for a carrier. By the way, nobody feels sorry for carriers, I know, but it avoids the fundamental unfairness for a carrier who acknowledges some small amount of covered loss, but in so doing, had basically bought anything that an appraisal panel might decide, regardless of whether or not it disregards any whole list of exclusions under the policy. That just frankly doesn't make any sense to me, and it doesn't make any sense to the courts in Georgia, and it's why Georgia won't allow it. And so moving back for a minute to State Farm versus Roche, I don't know how anyone can argue honestly with a straight face that State Farm versus Roche indicates some pronouncement from the Florida Supreme Court that they would recognize an exception to Lex Loci Contractus regarding insurance policies that insure real estate in Florida. If you read the court's opinion, I would submit ... The court couldn't have been any clearer. It says it multiple times, that Lex Loci Contractus applies to contracts in Florida, to all contracts. It doesn't carve out any contracts. In fact, the exception that the district court glommed onto in this case was the idea that the court would apply the significant relationships test in an insurance policy that covered property in Florida. That is the antithesis of what Roche is saying. What is the law in Georgia? Had this case been filed in Georgia, what did they apply for purposes of ... Did they apply Lex Loci Contractus, or what would have happened in Georgia? That's a great question, and I will confess to the court, I don't know the answer to it. I don't know the answer. But look, back to Roche. What Roche said, there's only a very narrow exception to Lex Loci Contractus, and that involves a paramount public policy issue. Never in the history of Florida jurisprudence, or in the history of jurisprudence from any other state that I'm aware of, has any state, including Florida, ever said that an insured has a fundamental right to impose appraisal on an insurance carrier. The truth of the matter is, all we're really asking is, the flip side of that equation is that we just want our day in court, and we're not trying to deprive the insured of their day in court either. The idea that they've been deprived of some fundamental right because they can't basically impose upon an insurance carrier an appraisal award when the insurance carrier just wants to litigate the coverage issues. So I don't know how, again, anybody could reasonably suggest that we're dealing with a paramount public policy exception. That is the only exception the Florida Supreme Court has recognized as it relates to Lex Loci Contractus regarding contractual disputes. Thank you. Thank you. Thank you both. We have your case under advisement. Thank you. Our next case, our second and final case of the day, auto owners insurance companies.